434 F.2d 11
 Earl Earnest SCOTT, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 30115 Summary Calendar.*
 United States Court of Appeals, Fifth Circuit.
 November 2, 1970.
 
 COPYRIGHT MATERIAL OMITTED Bill Joyner, North Miss. Rural Legal Services, Batesville, Miss., for appellant.
 H. M. Ray, U. S. Atty., Alfred E. Moreton, III, Asst. U. S. Atty., Oxford, Miss., for appellee.
 Before WISDOM, GOLDBERG and SIMPSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Scott's motion to vacate sentence under Title 28, U.S.C., Section 2255, was given a three-day evidentiary hearing by the trial court, March 31, April 1 and 2, 1970. At the conclusion of the hearing after arguments of counsel, the district judge dictated extensive oral findings of fact and conclusions of law into the record, reserving the right to "polish or edit them in final form, perhaps placing this holding in a memorandum opinion should that seem suitable".
 
 
 2
 A written memorandum was never filed, but we consider the oral findings and conclusions to be sufficiently complete to dispose adequately of all the questions of fact and law raised below and the issues raised on this appeal. Embellishment by us is not required. A copy of Judge Keady's findings and conclusions is attached as an appendix to this per curiam opinion and adopted as the judgment of this Court.
 
 
 3
 Affirmed.
 
 APPENDIX
 APRIL 2, 1970
 THE COURT:
 
 4
 The Court will make its findings of fact and conclusions of law at this time, but reserves the right to polish or edit them in final form, perhaps placing this holding in a memorandum opinion should that seem suitable.
 
 
 5
 The Court's findings of fact are as follows:
 
 
 6
 On July 20, 1962, Earl Earnest Scott, the petitioner, and two other defendants, Elmer Leon Woodruff and Charles H. Whatley, were indicted by the Federal Grand Jury of the Northern Judicial District of Mississippi, on five counts involving crimes committed against federally-insured banks. Count 1 of the indictment charges petitioner and the two other persons with unlawful conspiracy to rob a number of federally-insured banks such as Pace Bank at Pace, Mississippi, Bank of Vardaman, at Vardaman, Mississippi, Bank of Pope, Pope, Mississippi, and Ethel Branch Bank at Ethel, Mississippi. Counts 2, 3, 4 and 5 charged the same parties with the substantive offenses of unlawful entry at each of the said banks mentioned with intent to commit a felony or larceny therein.
 
 
 7
 Petitioner was then an inmate of the Mississippi State Penitentiary serving sentences for state convictions hereinafter mentioned. Pursuant to federal writ of habeas corpus ad prosequendum, petitioner was brought into Federal District Court on October 5, 1962, for arraignment. The co-indictees Woodruff and Whatley were present in Federal Court at the same time. Petitioner was represented by counsel, Alton Massey of Kosciusko, Mississippi, who had been retained by petitioner's wife and entered not guilty pleas to all counts of the indictment. At that same time, the coindictee Whatley entered guilty pleas to all five counts of the indictment, and in open Court while petitioner was present before he entered guilty pleas Whatley was informed that the maximum punishment limits if one were found guilty of the first count were as much as five years insofar as a prison term was concerned, and as much as twenty years insofar as each prison term for each of the four substantive counts were concerned, making a total maximum punishment limits for one convicted on a guilty plea of all such crimes, of eighty-five years.
 
 
 8
 As stated, petitioner was in court, and he heard that explanation of the seriousness as to the nature of the crimes and the consequences of a guilty plea insofar as the maximum punishment limits were concerned.
 
 
 9
 Following his pleas of not guilty, petitioner remained in federal custody at Clarksdale where he had a number of conferences with Mr. Massey, his retained counsel. There was full discussion between Massey and the petitioner concerning the defenses to be made to each of the charges. Witnesses were subpoenaed for the day that the case was set for trial by the Court, which was on a date certain in November, 1962; all trial preparations had been made and the case was calendared for trial. Then, petitioner decided that he would like to withdraw his plea of not guilty to Count 1 of the indictment and enter a plea of guilty thereto. A day or two prior to November 9, 1962, he notified Mr. Massey of his wishes in this regard. Massey had explained to petitioner that if he went to trial and were convicted on all counts the Court could impose a maximum punishment of as much as eighty-five years just as Mr. Whatley had himself been informed in Court at the original appearance. Massey also informed the petitioner in these conferences leading up to petitioner's decision to enter a change of plea that the United States was not interested in obtaining a conviction except on Count 1 of the indictment in view of the fact that petitioner was already under sentence pursuant to state convictions to serve three consecutive seven-year terms. Massey was of the opinion, and so expressed it to petitioner, that a plea of guilty, if petitioner saw fit to enter it, would probably dispose of the other counts in that they would be dismissed. Massey also expressed an opinion that while the maximum sentence under Count 1 of the indictment would be five years, that there was some possibility it might be less, but, no one could predict what sentence Judge Clayton, the Presiding Federal Judge, would impose and that no assurances or promises of any kind could be made with respect to what might be the sentence under Count 1 of the indictment, if petitioner pleaded guilty. Petitioner was fully aware of all consequences in his situation, and he discussed it with Mr. Massey. He knew what his choices were, and at that time he realized that he was obliged to serve three seven-year state sentences to the State of Mississippi. All of the state proceedings, so far as petitioner then knew, had been concluded. While Massey expressed his opinions about what might be the out-come in case of trial or in case of a guilty plea on Count 1 of the indictment, in so doing, he did not depart from the usual and customary role of a lawyer advising a client accused of crime.
 
 
 10
 Mrs. Lorena Scott, wife of the petitioner, did not at all figure in petitioner's decision to enter a plea of guilty to Count 1 of the federal indictment. She had in no way been involved in the federal charges; her name had not come up in the F.B.I. reports; neither Scott, the petitioner, Massey, nor Mrs. Scott herself in any way been put on notice that she was suspected of having committed any kind of federal crime either in conjunction with Scott or otherwise in the discussions that Mr. Massey had with petitioner prior to his change of plea. Mrs. Scott's position in no way influenced his decision. Petitioner did not at any time have on his mind, in deciding whether to plead guilty to Count 1 of the federal indictment, any considerations whatsoever relating to Mrs. Scott. There had not been advanced by Massey or anyone else a suggestion to petitioner that he should plead guilty to prevent his wife from being arrested for a federal crime or being prosecuted for a federal crime. Scott's decision to enter a guilty plea was entirely his own decision.
 
 
 11
 On November 9, 1962, petitioner appeared in Federal Court with his counsel, Alton Massey, and requested the Court's permission to withdraw his not guilty plea to Count 1, and enter a plea of guilty. At this point, Judge Clayton, the Presiding Judge, specifically inquired of petitioner whether there had been any threats or promises of any kind made to him to get him to withdraw his guilty plea, to which the petitioner said there had not been any such threats or promises. The Court then ascertained from the petitioner that he understood that the maximum punishment limits for one pleading guilty to Count 1 of the indictment could be as much as five years in the penitentiary and a $10,000 fine. Then, in direct answer to the Court's inquiry, the petitioner stated that no one had told him what sentence he, Judge Clayton, would actually put on him if he did plead guilty. The Court thereupon accepted petitioner's plea of guilty and notified him to be back in Court for sentencing on November 14, 1962.
 
 
 12
 On that date, petitioner and his retained counsel, Alton Massey, appeared before Judge Clayton, at which time he imposed a sentence upon petitioner of five years to be served in an institution to be designated by the Attorney General with the sentence to be, "In addition to and consecutive with the sentences you are now serving in the Penitentiary of the State of Mississippi." Judge Clayton further orally informed petitioner at that time, "This sentence will begin to run when you shall have fully served the sentences you are now undergoing on the State Court sentences or at the time you are paroled, or released from those sentences." Substantially the same sentence was given to the co-indictee, Elmer Leon Woodruff, who in the meantime had also entered a plea of guilty to Count 1 of the indictment.
 
 
 13
 The judgment and commitment entered by the Federal Court on November 19, 1962, read as follows: "It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of five years, in an institution to be designated by the Attorney General. This sentence is in addition to and consecutive with the sentences defendant is now serving in the Mississippi State Penitentiary. This sentence will not begin until after those sentences have been fully served, or defendant is paroled or pardoned therefrom."
 
 
 14
 Following imposition of the federal sentence, petitioner was returned to state custody at Mississippi State Penitentiary where he remained serving state sentences until May 26, 1967. On that date, he was released by state authorities pursuant to three bonds posted on his behalf guaranteeing his appearance in further state court proceedings. Following this release, petitioner went to his home at Jackson, Mississippi and entered civilian employment. Later he moved to Greenwood, Mississippi, for a while. At no time after his release did he surrender himself to the United States Marshal or offer to begin service of the federal sentence.
 
 
 15
 On September 26, 1969, this Court issued a bench warrant for his arrest following which he was taken into federal custody, and he has since that date been serving the federal sentence. Both before and after the issuance of the federal bench warrant, he has sustained serious heart attacks, and has been rated as a coronary thrombosis case by the federal prison authorities at the institution where he is presently incarcerated.
 
 
 16
 It is necessary that reference in greater detail be made to the state convictions. At the March, 1962, term of the Circuit Court of Calhoun County, Mississippi, petitioner, along with Elmer Leon Woodruff and Charles H. Whatley, were indicted for unlawful entry into the Bank of Vardaman with intent to commit a felony. On or about March 12, 1962, petitioner was arrested pursuant to this indictment, and he was carried to Calhoun County for trial. He entered a plea of not guilty on that indictment, and he was represented in court by retained counsel, P. M. Lamar. There was a full jury trial, resulting in conviction by the jury. The Circuit Court imposed upon petitioner a sentence of seven years in the Mississippi State Penitentiary. That conviction was appealed to the Supreme Court of Mississippi, but the appeal was dismissed by the State Supreme Court on November 12, 1962, for lack of prosecution. On January 8, 1963, the Supreme Court issued its mandate correcting the execution of the sentence contained in the judgment below. At some point in time, P. M. Lamar, the attorney who had represented petitioner in this proceeding, died. The record is not clear as to what efforts, if any, were made to obtain substitute counsel.
 
 
 17
 Next following the Calhoun County conviction, petitioner was, in March, 1962, indicted on two non-bank burglary charges by the Grand Jury of Leflore County, Mississippi; his wife, Mrs. Lorena Scott, was indicted as an accessory to those burglary charges. Mrs. Scott's sister employed Shed Hill Roberson and Semmes Luckett, Clarksdale attorneys, to represent Mrs. Scott, and they appeared in her behalf in the Leflore County Circuit Court. Scott then without funds, and being an indigent, had no lawyer or attorney of his own. He was not granted assistance of counsel by the Circuit Court of Leflore County, and was convicted on his guilty plea and sentenced in that Court to serve a term of seven years on each burglary charge, the two sentences to run concurrently. The indictment against Mrs. Scott was nolle prossed. This conviction and sentencing by the Leflore County Circuit Court occurred on May 22, 1962. Two days later, on May 24, 1962, petitioner was delivered to the Mississippi State Penitentiary where he began serving the Leflore County sentence.
 
 
 18
 There was a third state proceeding that then occurred. The Grand Jury of Tallahatchie County, Mississippi, indicted Scott on non-bank burglary charges. Scott appeared in the Tallahatchie County Circuit Court without counsel and without funds. He was not granted assistance of counsel. He entered a plea of guilty at the September, 1962, Term of the Tallahatchie County Circuit Court, was convicted of his guilty plea, and sentenced to serve seven years in the Mississippi State Penitentiary. Each of the three state seven-year sentences were to run consecutively.
 
 
 19
 All three of the Circuit Court proceedings had been completed, and petitioner was back at Parchman serving his time on the LeFlore County Circuit sentences.
 
 
 20
 After he first appeared in Federal Court to enter a plea of guilty to Count 1 of the federal indictment, later efforts were made on behalf of petitioner to assert his constitutional rights arising from a failure to afford him assistance of counsel at the time he appeared in the Circuit Courts of Leflore and Tallahatchie Counties.
 
 
 21
 Error coram nobis proceedings were filed in his behalf raising that point in the state courts of Mississippi. After adverse ruling by the Circuit Court of Leflore County, the Supreme Court of Mississippi sustained Scott's position on October 17, 1966, as to the Leflore County conviction. The judgment of conviction was set aside, and his case remanded to the Circuit Court of that county for arraignment and new trial, Scott v. State, Miss., 190 So.2d 875. The State Supreme Court specifically found that petitioner had been denied his right to the assistance of counsel by the Circuit Court of Leflore County, Mississippi, and for that reason the conviction was voided. Notice of that action was promptly sent to Mississippi State Penitentiary authorities, and on October 17, 1966, the day after the State Supreme Court acted, petitioner was placed on service of his Tallahatchie County sentence. He continued to serve that sentence notwithstanding efforts were being put forward in his behalf to set aside the Tallahatchie County conviction on similar grounds of denial of right to assistance of counsel.
 
 
 22
 A writ of error coram nobis was filed before the Circuit Court of Tallahatchie County, The Honorable Curtis M. Swango, Jr. In March, 1967, the judge refused the writ, but entered an order staying execution of the Tallahatchie County sentence upon petitioner's making bond in the amount of $15,000.00. At this point in time, petitioner was represented by Walter M. O'Barr, attorney of Okolona, Mississippi, who notified the state penitentiary authorities of this action taken by Judge Swango. Thereafter, petitioner's wife, H. E. Blaine, his son-in-law, and other members of the family secured necessary bonds in accordance with the orders of the three state courts involved; namely, an appearance bond of $1,000.00 to guarantee his appearance at further proceedings before the Circuit Court of Leflore County, whose original judgment had already been reversed by the Supreme Court; a bond in the amount of $15,000.00 guaranteeing his appearance in the Tallahatchie Circuit Court pursuant to Judge Swango's order; and a further bond of $2,000.00 guaranteeing his appearance before the Calhoun County Circuit Court. Walter O'Barr, counsel for petitioner at or about the time bonds were being prepared on petitioner's behalf, had obtained from the Honorable Stokes Robertson, Jr., Associate Justice of the Mississippi State Supreme Court, an order granting petitioner liberty from the Calhoun County judgment upon his posting $2,000.00 bond to guarantee his further appearance before the Circuit Court of that county. The Justice's order was promptly sent to the Mississippi State Penitentiary. At or about that time, which was in the latter part of April, 1967, O'Barr, the attorney, and Mrs. Scott, petitioner's wife, came to the penitentiary with the bonds requesting petitioner's release. They learned from prison officials that a federal detainer was outstanding, the United States Marshal at Oxford, Mississippi, would have to be notified of Scott's impending release and the federal officers given an opportunity to take him into federal custody. O'Barr, Mrs. Scott and the petitioner were all aware of the fact that the five-year federal sentence was not to begin until petitioner had first satisfied his time with the state, and they realized problems that petitioner would face if he were turned over to the federal authorities. Thereupon, petitioner decided that the bonds would not be immediately filed. B. C. Ruth, a prison official, who had earlier that day notified the United States Marshal that Scott's release was imminent, then placed a second call to the Marshal's Office at Oxford, to notify them that the release was not imminent, and they need not send a Deputy Marshal.
 
 
 23
 Next, Mrs. Scott undertook to inquire of Judge Clayton, the Federal District Judge, about the situation; she was advised that the sentence stood as written, and that it would have to be served. Approximately four weeks later; namely, on May 26, 1967, the three bonds were again brought to the state prison authorities by petitioner's family and representatives, and on that date delivered to prison officials. B. C. Ruth, Classification Officer at Parchman, notified the United States Marshal at Oxford that Scott's release was to be made that day on the basis of the three bonds previously mentioned; that petitioner was going to Jackson, and Ruth described the automobile in which Scott was to travel. The United States Marshal made no effort to pick the petitioner up prior to his discharge from state custody nor did he make any subsequent effort to do so before the issuance of the federal bench warrant in September, 1969.
 
 
 24
 Because of the unusual aspects of this case, the state prison officials had brought the matter to the attention of the State's Attorney General. The matter of petitioner's release from Parchman was of concern not only to Scott, but also to his son-in-law, H. E. Blaine, who was the surety on the bonds to the three state courts, the District Attorneys before whom he had unfinished business as well as the federal court officials, including Judge Clayton, and H. M. Ray, United States Attorney. All these interested parties, including Scott's own counsel, Walter O'Barr, were put on notice by the Attorney General's letter dated May 25, 1967, that although Scott was being released from the State Penitentiary, it was on the express basis of the three bonds that he had made, that he was subject to the further orders of each of the three state Circuit Courts involved, and in event the federal authorities picked him up for immediate service at that time on his federal sentence, and took him outside the State of Mississippi so as to make impossible his return to the Mississippi State Court proceedings, demand would be made for forfeiture of the total bonds in the full amount of $18,000.00. At the time of Scott's release from the Mississippi State Penitentiary, he and his attorney, Walter O'Barr, discussed this situation; they were fully aware of the fact that the federal sentence was outstanding and had to be dealt with. It was obvious that petitioner had an option of voluntarily surrendering himself to federal custody and beginning service on his federal sentence, or as he testified in this Court, go home and wait till the federal authorities took action. Walter O'Barr, his counsel, advised him to pursue the latter course, which he did.
 
 
 25
 The next significant step in point of time was that on April 1, 1968, approximately ten months after his release from the Mississippi State Penitentiary, the State Supreme Court acted on the appeal from his error coram nobis proceeding in Tallahatchie County, Mississippi, by vacating the Tallahatchie County conviction and ordering the case remanded for new trial, after new arraignment. Once again, the State Supreme Court concluded that petitioner had been denied the assistance of counsel and his constitutional rights violated. It set aside the judgment, Scott v. Mississippi, 208 So.2d 754.
 
 
 26
 Following release from state custody, petitioner made no effort to conceal himself or his place of residence; he engaged in business and carried telephone listings at his various city residences yet he was under obligation to answer in accordance with the terms of his three appearance bonds, for while his judgments of convictions had been set aside in the two proceedings in Leflore County and Tallahatchie County, he had not been acquitted of those charges. Also, he remained answerable to the Circuit Court of Calhoun County for such further proceedings as that Court might see proper.
 
 
 27
 In March, 1969, the United States Attorney's Office, aware of the fact that petitioner was still at liberty, began to inquire of the District Attorneys of the three Circuit Courts involved as to the status of things and whether there would be further state prosecutions. The Leflore County District Attorney reported to the United States Attorney by letter, dated March 11, 1969, that the Leflore County case against Scott could not be further prosecuted, and it would be dismissed. The District Attorney from that county informed the United States Attorney that so far as the Leflore County case was concerned, "You may now proceed with imposition of the federal sentence." Substantially the same information was received from the District Attorney of Tallahatchie County, Mississippi, by letter dated March 11, 1969, to the effect that there would be no further prosecution of petitioner in that county on the state charge. A reply from the prosecution at Calhoun County was somewhat delayed, for it was not until the United States Attorney had written three letters to its District Attorney that their position of no further action was ascertained.
 
 
 28
 State authorities have made no effort to retake petitioner for service on the Calhoun County sentence or such unexpended portion of it as may remain.
 
 
 29
 Petitioner has fully satisfied any valid conviction of the state courts, and the only one here which was not expressly set aside was the seven-year sentence imposed by the Circuit Court of Calhoun County.
 
 
 30
 Under federal procedure, no reports on a federal prisoner are filed with the Bureau of Prisons until Form 792 is delivered by the Marshal or his Deputy to the institution receiving the federal prisoner. Hence, that was not done until petitioner was delivered to the federal prison subsequent to the issuance of the federal bench warrant. This petitioner was received at the Federal Correctional Institution at Texarkana, Texas, on October 18, 1969. He is given credit upon the five-year federal sentence for all days beginning September 29, 1969, the date on which he was picked up under the bench warrant. He becomes eligible for parole on May 28, 1971, with his full term expiring September 28, 1974.
 
 My conclusions of law are as follows:
 
 31
 This Court has jurisdiction to hear this petition on motion to vacate sentence filed pursuant to 28 U.S.C., Section 2255.
 
 
 32
 There are a number of contentions made by petitioner that he is entitled to relief. The burden of proof in this case is on the petitioner under Twining v. United States, 5 Cir., 321 F.2d 432, for a judgment of conviction is not to be set aside for light or transient reasons. It must be made clear to the Court that wrong has been done, and an injustice committed.
 
 
 33
 In the exercise of caution, the Court has granted an evidentiary hearing to petitioner in order to carefully sift through all of the matters that have happened in his life since 1962 that might have legal significance. The Court has also appointed counsel to represent petitioner and the Court wishes to express its thanks to unpaid counsel for diligent service rendered by him in behalf of petitioner.
 
 
 34
 Petitioner's first claim is that his plea of guilty to Count 1 of the federal indictment was coerced and improperly induced so that this Court should now set aside the sentence because of the plea's invalidity. His principal contention is one of fact; namely, that Mrs. Scott was held up to him by his retained counsel, Alton Massey, as likely subject to federal prosecution and incarceration if he did not plead guilty.
 
 
 35
 The Court has listened to petitioner, his wife, and the co-indictee Woodruff, who have offered testimony to that effect. It has also heard the testimony of Alton Massey expressly denying that any such conversation took place. It has also considered the statements made by petitioner in open court to Judge Clayton. The background facts and circumstances clearly show that the state charges, so far as petitioner knew or realized, were all over and behind him and his wife was entirely out of the state charges before he became answerable for the federal indictment. On the facts, the Court has found that Alton Massey did not make any such claimed statements to petitioner, and he did not in any way coerce, threaten or intimidate petitioner to get him to enter a guilty plea on the basis of what might happen to Mrs. Scott. Mrs. Scott's interest had been fully and completely served by her own separate counsel, Semmes Luckett and Shed Hill Roberson, and those matters had been concluded. Alton Massey, retained by Mrs. Scott at a later point in time, knew nothing of the state proceedings, had no contact with the Clarksdale attorneys representing Mrs. Scott, and he was at no time placed on notice by anyone that Mrs. Scott was suspected of any federal charge. As a matter of fact, no such intimidation or coercion was made to petitioner; and the Court so holds.
 
 
 36
 In the latter part of the trial of this case, it developed that petitioner might have been led to believe that it would have been easier on him to plead guilty to Count 1 of the indictment rather than to go to trial on all of the counts. He had a discussion with his counsel along that line, and his counsel, Alton Massey, expressed his opinions based on experience in other matters. The evidence here fails to show that there was any plea-bargaining in the usual sense of the term; but this Court holds to the view that a plea of guilty is not rendered involuntary merely because it might have been induced as a result of a plea-bargaining situation. Nothwithstanding what his attorney might have advised him as to what could happen in case of trial or what could happen on a plea of guilty, petitioner knew that if he pleaded guilty to Count 1 of the indictment, he could not be sentenced for more than five years, and he also knew that it was known to all concerned that he had three consecutive seven-year state sentences to serve. His plea of guilty under all the evidence in this case was a genuine one to Count 1 of the indictment. He understood the situation completely; he knew what his rights were; he was aware of the consequences of his plea; he was not deceived in any way, nor was he coerced or forced to do anything.
 
 
 37
 Now, the Court rejects out of hand the contention that petitioner did not have adequate assistance of counsel. Alton Massey, the facts show here without dispute, is an experienced criminal lawyer, having tried cases involving major crime in both the state and federal courts; that he was prepared to try this case for petitioner, had talked to witnesses, had subpoenaed witnesses, had made all preparations for trial; in his opinion he thought he had a good chance in trial. In the final analysis, it was not inadequacy of counsel that caused petitioner to reach the decision that he did, but that it appeared to petitioner in the circumstances that he was confronted that it would be best for him to enter a plea of guilty particularly under an impression that if he did so, the other counts, involving the twenty-year terms, would be dismissed. Actually, the entire matter was wrapped up right in open court. As soon as he entered a plea of guilty to Count 1 of the indictment, Judge Clayton required the United States Attorney to move then and there for the dismissal of all four counts which was done in open court. There is no basis in law or fact for the claim that the plea was coerced or that petitioner was denied the effective assistance of counsel. The Fifth Circuit opinion in Schnautz v. Beto, 416 F.2d 214, is illustrative of the rules of law by which this Court is guided in reaching its conclusion with respect to the contention just discussed.
 
 
 38
 Petitioner next asserts that there is an invalidity in the terms of the federal sentence itself in that Judge Clayton imposed a five-year term not to be served until certain conditions occurred; one, either the state sentences were fully served, or, two, the petitioner was pardoned; or three, the petitioner was paroled or released. It is urged that because of the actions of the Mississippi Supreme Court, he never served his state sentences, he was never pardoned by the Governor, and he was never paroled by the state authorities. That the conditions Judge Clayton attached to his sentence are impossible of fulfillment and, therefore, the sentence must fall. In the alternative, petitioner argues that there is such ambiguity or conflict between what Judge Clayton orally said and what his written judgment provides that the sentence must be vitiated. The Court rejects both of those contentions. The law is well settled that if there were any conflict between the oral pronouncement of judgment and the written judgment itself, the terms of the oral pronouncement would control. So, if the two conflict, the oral pronouncement controls. On the other hand, there may be no conflict but simply an ambiguity. The actual intention of the sentencing judge is to be ascertained both by what he said from the bench and by the terms of the order he signed, or from his total acts. Authority for this holding is Baca v. United States, 10 Cir., 383 F.2d 154. As this Court construes the oral pronouncement by Judge Clayton and his written judgment of conviction, the intent was to defer serving the federal sentence until petitioner satisfied the state authorities. That is unmistakably clear. In the next place, regardless of what the federal judge either said or wrote as to when the federal sentence would begin, Congress itself has legislated on that precise subject. It is beyond the power of any judge, Judge Clayton, myself, or any other federal judge, to vary the terms of that statute, 18 U.S.C., Section 3568, which provides that the sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary for service of such sentence. The only exception is that if such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention. If there were any doubt about it, the next provision of the statute provides: "No sentence shall prescribe any other method of computing the term." In Harrell v. Shuttleworth, 200 F.2d 490, the Fifth Circuit Court of Appeals was confronted with a case involving a sentence closely in point to the one here. The defendant was ordered committed "to the custody of the Attorney General as the authorized representative for imprisonment for a period of two years to begin at the expiration of sentence defendant is now serving in the Florida State Prison." It turned out that there was an additional state sentence subsequently imposed after the federal sentencing, and the prisoner contended that because of the language in the federal judgment of sentence the federal sentence had to start running when the first state sentence was served and not the subsequent state sentence. The Fifth Circuit rejected that argument by saying that: "The short answer to that contention is that the sentence could not prescribe any method of computing the terms other than that prescribed by 18 U.S.C.A., § 3568," citing settled authorities. In a word, when a federal court imposes a sentence upon a defendant, that sentence begins to run from the date he, the prisoner, is received at the federal institution, and no judge or court may prescribe a different method. Thus, when a court undertakes to prescribe when a sentence shall being to run, it is surplusage and has no effect; it cannot displace the Act of Congress. That much is clear and unequivocal. The contentions of the petitioner that the terms of the sentence are either so vague, or conflicting and contradictory, or premised on conditions that never came about, and therefore void, are without merit and must be rejected here.
 
 
 39
 Petitioner next urges that since the state sentences were void as rendered by the Circuit Courts of Leflore and Tallahatchie Counties, and because during all the time that he was serving in Parchman there was a federal detainer outstanding, he is entitled to credit on the five-year federal sentence for the time that he spent in Mississippi State Penitentiary. Now, if his position in that regard should be correct, the federal sentence would have been served, as he has spent more than five years in the state penitentiary. Counsel for petitioner cites the case of Ekberg v. United States, 1 Cir., 167 F.2d 380, as authority for the proposition that petitioner is entitled to time served under void state sentences against his federal sentences. Ekberg is authority for the proposition that if several or consecutive federal sentences are imposed upon a defendant, some of which are void, credit against the valid sentence should be given for the time spent in federal custody. That rule does not apply to this case. The Government cites as controlling Green v. United States, 1 Cir., 334 F.2d 733, where the Court held that the defendant was not entitled to credit on federal sentence for time served on a state court sentence he was serving when convicted of the federal offense, though the state sentence was subsequently reversed; that is exactly the situation in the case at bar. Ekberg v. United States, upon which petitioner here relies, was distinguished in the Green case for the reason that Ekberg dealt with consecutive federal sentences. The Court is mindful of the fact that there was a dissenting opinion by Circuit Judge Aldrich, in the Green case. However, it also takes note of the fact that the rule of Green v. United States was applied per curiam by the Fifth Circuit Court of Appeals in Syrotchen v. United States, 351 F.2d 952. This Court is of the view that the Green rule as announced by the majority in that case is here controlling, and on the basis of that case, petitioner's claim that he is entitled in this Court to credit for the time spent at Parchman under void state sentences must be rejected. In so ruling, this Court would be quick to say that if his liberty were being challenged by the State of Mississippi, due process would demand that the state give him credit against all time served at Parchman under void state convictions. Up to this point, the Court has regarded all three state convictions as void, but that is not necessarily the case. On the basis of the record made before this Court, the conviction in Calhoun County, Mississippi, appears to be valid and petitioner was required to serve seven years by the sentence of that court. According to the evidence a seven-year sentence imposed on Scott would be completed in a little more than five years, which, incidentally, is just about the time Scott did spend at the Mississippi State Penitentiary. It may further be said, as an almost self-evident fact, that on the basis of his actual prison service, petitioner has satisfied the requirement of the Calhoun County conviction, even if it were given full validity, as this Court must do on the basis of the present record, so that he could not be further confined with respect thereto.
 
 
 40
 Lastly, the petitioner argues with force that when he was released at Parchman in May, 1967, federal authorities were under a duty to take him into custody without delay, and because they failed to do so, he was allowed to go out into the free world to resume his business. He was out in that free world for about twenty-seven months before the issuance of the federal bench warrant to take him. From the evidence the Court holds that the United States Marshal was fully advised that petitioner was being released from the Mississippi State Penitentiary, and also the Marshal had ample opportunity to go to the penitentiary and take petitioner into federal custody at that time. For him to have done so, would have been contrary, however, to the intent of Judge Clayton's order, dashed the hopes and aspirations of petitioner and his family, and would likely have subjected petitioner and his son-in-law to serious bond liabilities.
 
 
 41
 The Court would like to briefly recount the situation. On the day of his release from Parchman, as said earlier, the petitioner, his wife, and his attorney well knew the federal sentence was outstanding and that petitioner had the choice of surrendering himself to the federal Marshal to begin his prison service. To have done so, however, would have voided the practical effect of all efforts of the Scott family to make these three bonds and procure his release from the Mississippi State Penitentiary. They were interested only in placing him at liberty under those bonds. The State of Mississippi had a very definite interest in where he went, and in no uncertain terms, the Attorney General put both him and the federal officials on notice that if he was taken under the federal sentence and sent outside the state, there could well arise a liability of $18,000 on these bonds, in case of his non-appearance. The United States Attorney knew that; the United States Marshal knew that; Judge Clayton was aware of that. It was very much in petitioner's interest, therefore, that he not be at once taken into federal custody for he had not yet satisfied his obligations to the state, particularly when one recalls that nearly eleven months elapsed from the time he walked out of Parchman before the State Supreme Court in the Tallahatchie County case set his conviction aside. Until that time, he was liable on a $15,000 bond to that court alone. True enough, petitioner did not conceal himself from the federal authorities, and they knew at all times where he was, and the United States Attorney kept track of his case. After realizing what this Supreme Court of Mississippi had decided in the Tallahatchie County case, he began to make inquiry from the District Attorneys of the three Circuit Courts involved. They were public officers with a duty to perform. They were under duty to prosecute or nolle prosse. Petitioner was under duty to report to their Courts. As soon as practicable, they advised the United States Attorney, and when they did, he acted consistently with what had been the original intent; namely, since the State of Mississippi was satisfied, it was in order to apply to this Court for a federal bench warrant. While an elapse of some twenty-seven months during which petitioner was allowed his liberty before taken into federal custody, it was under circumstances which were in petitioner's interest. There had been no loss of interest in him on the part of the federal authorities.
 
 
 42
 The Court holds from this evidence that there was no element of estoppel involved by the federal government or its officers but simply a mere lapse of time for the indicated period which was necessitated to give petitioner, who had been involved with state convictions under highly unusual conditions, an opportunity to work those matters out. This Court holds that the mere lapse of time that occurred here, without petitioner undergoing any actual imprisonment to which he was sentenced by Judge Clayton, does not constitute service of that sentence, and this sentence remains subject to be executed, nothwithstanding the delay in executing it. This is definitely the ruling of the Fifth Circuit Court of Appeals in the case of United States ex rel. Mayer v. Loisel, 25 F.2d 300, with annotation to the same effect in 98 A.L.R.2d 688, which recognizes the general rule that delay in executing sentence of imprisonment does not ordinarily preclude subsequent enforcement of the sentence. That is peculiarly appropriate in those cases where the convicted party had himself been instrumental in causing the delay in execution or where the delay was occasioned by appeal or purported appeal in connection with legal proceedings. There was no reason for the delay in this case except waiting on the state courts of Mississippi to handle their charges against petitioner in a lawful, constitutional manner. Any further delay than that was prompted by petitioner's own carefully selected option that he would wait until the federal authorities were ready to pick him up, and that's exactly what he did.
 
 
 43
 The Court has attempted to analyze all of the legal issues that are present in this case, and it has disposed of them to the best of its ability. In the final analysis, the question is whether the sentence of the federal court as imposed by Judge Clayton is for some legal reason invalid or rendered inoperative because of all that has happened or should be set aside to avoid substantial injustice. It needs only to be said that the bad physical condition of a prisoner concerning which there is no doubt, is not a legal basis for vacating a valid sentence. Petitioner's state of health may very well be a consideration to be addressed to the executive clemency. Certainly the judge of this Court would not personally be averse to his appeal to executive clemency. However, on the basis of petitioner's motion to vacate, the Court concludes that his grounds are not well taken, and his relief will be denied. An order will be prepared accordingly.
 
 
 
 Notes:
 
 
 *
 Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part. I