Jack Wright TWINING, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20031.

United States Court of Appeals
Fifth Circuit.

Aug. 5, 1963.

Rehearing Denied Sept. 12, 1963.

Thomas C. Wicker, Jr., Frederick Burkart, New Orleans, La., for appellant.

Louis R. Lucas, Asst. U. S. Atty., New Orleans, La., Louis C. La Cour, U. S. Atty., for appellee.

Before RIVES and GEWIN, Circuit Judges, and SHEEHY, District Judge.

GEWIN, Circuit Judge.

This is an appeal from an adverse ruling of the District Court for the Eastern District of Louisiana in a proceeding instituted by appellant pursuant to 28 U.S.C.A. § 2255, filed approximately 5 years after sentence was imposed.

Briefly summarized, the defendant makes the following contentions: (1) he did not intelligently and understandably waive the right to counsel because he was not sufficiently informed of the na-

ture of the charges against him, the range of allowable punishment, possible defenses or circumstances which would tend to mitigate; (2) he did not intelligently and understandably waive indictment and was not furnished with a copy of the charges against him in advance of arraignment; (3) he was advised only in a perfunctory manner of the nature of the charges and of his rights, and the trial court did not ascertain or determine that his plea of guilty was made understandably and intelligently; and (4) the trial court consulted with the prosecuting attorney and the F.B.I. Agent who investigated the case out of the hearing of the petitioner.

Defendant was convicted and sentenced after entering guilty pleas on December 5, 1956, to a two count information charging him with a violation of the Bank Robbery Act, Title 18, § 2113(a) & (d). He was given a sentence of 20 years under Count Two [subsection (d)]; and 10 years under Count One [subsection (a)]. The sentences were to run consecutively. Thereafter, the Supreme Court in Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), held in similar circumstances that the statute embraced only one offense and therefore, only one sentence could be imposed. The trial court thereupon vacated the 10 year sentence originally imposed pursuant to § 2113(a).

The landmark cases dealing with the contentions of the appellant require a careful examination into the particular facts and circumstances involved, including the background, experience and conduct of the accused. On November 28, 1956, at approximately 2:00 P.M., the Bank of St. John located in Reserve, Louisiana, was robbed by the defendant. The defendant entered the bank and conferred with the Vice-President about opening an account. He had $50.00 in his hand, which he stated he wished to deposit. He was given a deposit card to complete; but before doing so, he jumped over the counter to the left of the Vice-President's cage into the area where the tellers operate, displayed an automatic pistol, informed the occupants that "This is a hold up", and directed everybody to lie down on the floor. He locked 3 women tellers, the Vice-President and a customer in the inner vault. Another customer entered the bank and he tried to place this customer in the vault where the other people were, but the door could not be opened. He placed this customer in the second room in the vault and closed the grill after an unsuccessful attempt to close the main door. He then went back into the banking area, rifled the cages of the 4 tellers, left the bank through the front door, entered his car and left. He took $11,790.00 with him. Luckily, there was a phone in the vault for use in cases of emergency. One of the tellers had closely observed the car in which Twining was traveling and was able to describe it. The Vice-President was able to give the alarm by telephone within 10 minutes after the occurrence. Fortuitously, the Sheriff, who was on the Airline Highway, spotted the car immediately and radioed the Highway Patrol. A Highway Patrol officer and a deputy sheriff were also in the vicinity where the car was located. The Highway Patrol officer and the deputy sheriff approached Twining's car and stopped him immediately. Twining forthwith stated that he was the individual who had robbed the bank and pointed to the money in the rear of the car. Twining had a .25 caliber automatic pistol in his pocket, which he stated was the one he had used in the bank. Lodged between the seat and the back of the front seat was a second gun, a Colt automatic. He was taken to the bank immediately and confronted by his recent victims, who positively identified him on the spot. Twining readily, voluntarily, and quickly outlined the series of events which led to the robbery and his arrest. Two weeks prior to the robbery he was in the custody of the Florida State Penitentiary. In accordance with plans there made, he escaped on November 11, 1956. Another convict had given him the "layout" of the bank in Reserve, a plan was drawn, and the location of the bank determined.

Merchandise, sales tickets, and other papers indicated he had traveled as far north as Buffalo, New York, and had returned to New Orleans on or about November 25, 1956. He used an alias. He decided to rob the bank on the night of November 27th. He left the hotel in New Orleans on the morning of the 28th, and proceeded a few blocks to a point where he found a 1952 Chevrolet with the keys in the ignition. He stole that car, proceeded to Reserve, Louisiana, drove by the bank a time or two, parked in front of it, committed the robbery, and drove off in the stolen automobile. In short, it appears that the robbery was well planned, and skillfully and successfully executed. A telephone in the vault, fortuitous circumstances, and alert police officers made quick work of his apprehension and capture. The defendant was caught red handed with the goods in his possession, that is, $11,790.00, the weapon he used in the robbery plus one other, and the stolen automobile. His identity was established in such circumstances that no doubt whatever existed as to his being the robber. This series of unusual events took place in a short period of time on the afternoon of November 28, 1956.

In our consideration of the contentions of the defendant in his collateral attack, brought 5 years after his apprehension, identity, plea of guilty, conviction and sentence, we have carefully examined the leading cases on the questions presented. We start with the case of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), wherein the Supreme Court laid down the following fundamental principle:

"The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

We have also considered the cases strongly relied upon by the appellant, Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); and our case of Smith v. United States, 238 F.2d 925 (1956).

We have carefully analyzed the Von Moltke case. There the defendant was a German woman residing in the United States, charged with the serious offense of conspiracy to commit espionage while this country was at war with Germany. She was arrested during the early morning hours while still in bed, placed in solitary confinement, questioned by F.B.I. Agents from 10:00 A.M. to 9:00 P.M. for several days, was held incommunicado, and was denied access to counsel on the ground that she was an enemy alien. After 8 days of such treatment, she was taken before an Enemy Alien Hearing Board where she was denied the right of counsel. After another month of similar detention she was taken to the courthouse for arraignment. When the trial court found she had no lawyer, a young attorney present in the courtroom was asked to aid the defendant. The attorney objected, but finally agreed to assist only during arraignment. His assistance consisted of a whispered conversation with the defendant lasting from 2 to 5 minutes, after which a plea of not guilty was entered. She was informed that an attorney would be appointed to represent her at trial, and thereafter she was held incommunicado during which time she was visited daily, except on Sundays, by F.B.I. Agents, some of whom were lawyers. The record shows a complete ignorance on her part of the laws of the United States, but she continued to inquire as to her rights. The implications of the indictment were explained to her by F.B.I. Agents; she was apprehensive as to whether her husband would be involved; as to the presumption of her guilt by association with people who were guilty; the meaning of conspiracy and the advisability of pleading guilty or innocent, during all of which time she was unaided by counsel. Finally, on the day of trial she entered a plea of guilty without the aid of counsel, although she had been promised counsel. The charge against her authorized a maximum pen-

alty of death, but she was not informed of this fact. The court found that the undisputed testimony showed that when the petitioner entered her plea of guilty, she did not have " * * * that full understanding and comprehension of her legal rights indispensable to a valid waiver of the assistance of counsel." The court further found that the defendant was confused as to the allegation of overt acts in the conspiracy indictment; that she was confused and concerned about numerous legal questions presented; that she had " * * * never set foot in an American courtroom * * *"; and that her promised counsel did not appear in her case until after she had entered her guilty plea, " * * * too late to do her any good." She constantly and persistently sought legal advice from all of the limited number of people who saw her during her period of close incarceration before her plea of guilty was entered. Our case of Smith v. United States, supra, followed Von Moltke and there based its decision upon " * * * the inordinate speed, the incontinent haste, with which the defendants were brought up for hearing * * *", and the fact that the Government prosecuting agent and the district judge had conferred privately in chambers with regard to the defendant's guilt and punishment before the defendant had made any waivers or entered his plea. In the circumstances of Smith, it was decided that the defendant had been denied due process.

In addition to the foregoing cases, we have also carefully considered Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); and Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

With reference to all of the contentions of the appellant on this collateral attack, the trial court conducted a full and complete hearing at which the defendant was present in person and with competent counsel. He has been afforded the assistance of able, skillful and diligent counsel on this appeal. We are impressed with the fact that the District Court gave the appellant full opportunity to present all his proof, insinuations and contentions at the hearing under consideration, and conducted a full hearing as to the facts. As pointed out in Johnson v. Zerbst, the burden of proof is upon the appellant in the circumstances of this case, and a judgment should not be set aside for light or transient reasons on collateral attack, even in habeas corpus or in proceedings under § 2255.[1]

In light of all of the authorities and after a careful consideration of the facts, we cannot agree with the contentions of the defendant. The appellant testified that after 5 years he did not recall the Commissioner advising him as to his right to counsel. The Commissioner testified he could not remember the specific events which took place when the appellant was arraigned, but that it was his practice always to advise defendants of their right to counsel when arraigned. He further testified that if the

---

1. The following clear statement from Johnson v. Zerbst remains the law:

   "It must be remembered, however, that a judgment can not be lightly set aside by collateral attack, even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel. If in a habeas corpus hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ."

   As pointed out in Hawk v. Olson, 326 U.S. 271, 279, 66 S.Ct. 116, 90 L.Ed. 61, an uncontradicted assertion of a witness does not have to be accepted, but credibility is for the trier of the facts.

defendant had made inquiry, it was his practice to advise as to the range of punishments. A U. S. Deputy Marshal, the arresting officer, likewise stated he could not remember specifically what had transpired 5 years previously, but it was his practice and custom to serve a copy of the complaint with the warrant upon defendants and read the complaint if the defendant could not read. It was further proven, that it was the custom of the Commissioner to again read the complaint to a defendant when he appeared before the Commissioner. The record clearly shows that the information was read to the defendant in open court and no question arose as to his understanding of it. The information was clear and uncomplicated. It closely tracked the events which had so recently transpired, all of which were known to Twining and in which he was the chief actor. We cannot believe he was ignorant of the nature of the charges against him. In Ray v. United States, 192 F.2d 658 (1951), this court stated:

> "The same is true as to the alleged failure to furnish defendant a copy of the indictment. The original indictment was read in full to the defendant in open court. He made no claim that he was not furnished a copy, nor did he complain of the alleged omission, until after sentence. Moreover, the omission to furnish the defendant a copy of the indictment, even if error remediable on direct appeal, does not render the judgment subject to collateral attack under 28 USCA § 2255."

The District Attorney carefully advised Twining of his right to legal representation and the fact that the court would appoint counsel to represent him if desired or requested. Appellant positively stated that he would enter his own plea. The court then interrogated the defendant as to whether or not he understood what the U. S. Attorney had stated to him with respect to the right to counsel, and he answered in the affirmative and thereupon waived the right of counsel in writing. He was also fully advised that he was entitled to have the matter presented to a grand jury and there investigated. He agreed to have the charges presented by information.

The defendant was no novice and he was not a stranger to the courtroom. Four years previously he had been arrested and given a sentence of 3½ years for violating the Dyer Act. He stated to the court that he realized that the offense of bank robbery was serious as compared to a violation of the Dyer Act. His criminal record extended back to 1950, a period of 6 years. In 1955 he was convicted of assault with a dangerous weapon on a police officer; and was being sought in 1955 for attempted armed robbery in Miami, Florida. He was subsequently convicted of attempted armed robbery and sentenced to the penitentiary of Florida, but he escaped from custody and fled to Georgia. In Savannah, Georgia, he was arrested on a car theft charge and sentenced to a term of one year. He had a record as a parole violator, an escapee, and he was an escapee at the time the robbery in question was committed.

When Twining was sentenced, the Judge commented upon the fact that bank robberies in his district had been held at a low figure because, as the court stated, it was his opinion that substantial sentences imposed in the past " * * * have had something to do with that." Thereupon the defendant responded in open court: "That will more than likely hold them down in the future too." The appellant stated that he realized that he was charged with bank robbery. He was informed that he was charged with an offense for which he could be imprisoned for a term exceeding one year. There is nothing but Twining's own statement to prove that he entered his plea without an apprehension as to "the range of allowable punishments". His statement, in the circumstances of this case, does not have to be accepted as conclusive proof. Hawk v. Olson, supra. He certainly knew that the crime he committed was more serious than one for

which he had been sentenced to a term of 3½ years.

 There is no evidence of any injury to the appellant because of the short conference between the District Attorney, the F.B.I. Agent and the Judge in open court. It was not an extended conference in chambers relating to the guilt or punishment of the defendant. The testimony shows that the Judge only made inquiry of the officers in question as to the information by which the appellant was prosecuted.

Considering the record as a whole, we believe the defendant has been given a fair and impartial hearing; and quite contrary to his contentions, not only has he failed in proving his allegations, but the record disproves them.

The judgment is affirmed.