03-2837-pr
Cousin v. Bennett

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued: April 10, 2007                                                      Decided: January 4, 2008)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

HERBERT COUSIN,

   *Petitioner-Appellant*,

  v.                                                                                    Docket No.  03-2837-pr

FLOYD G. BENNETT,

   *Respondent-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL, CABRANES, RAGGI, *Circuit Judges*.

  Petitioner-appellant appeals from the judgment of the United States District Court for the Eastern District of New York (Weinstein, *J.*), denying his petition for habeas corpus on the ground that the prosecutor's peremptory strike of the only African-American to be called for voir dire did not give rise to a *prima facie* case of racial motivation under *Batson v. Kentucky*, 476 U.S. 79 (1986). Affirmed.

             JULIA PAMELA HEIT, New York, New York, for *Appellant*.

             GUY ARCIDIACONO, Assistant District Attorney,

Suffolk County, Riverhead, New York (Thomas J. Spota, District Attorney of Suffolk County, *on the brief*), for *Appellees*.

LEVAL, *Circuit Judge*:

Petitioner, Herbert Cousin, appeals from an order of the United States District Court for the Eastern District of New York (Weinstein, *J.*), denying a petition for habeas corpus under 28 U.S.C. § 2254. Petitioner sought to vacate a New York State court conviction on the ground that the New York courts misapplied *Batson v. Kentucky*, 476 U.S. 79 (1986), when they found that petitioner failed to make a *prima facie* showing of racial motivation. We affirm the district court's ruling. The New York State Supreme Court, Appellate Division's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court rulings. *See* 28 U.S.C. § 2254(d)(1).

**BACKGROUND**

Petitioner was indicted in Suffolk County, New York, on one count of first degree rape and one count of second degree assault. The jury was selected by calling successive panels of jurors for voir dire. Before being called into the jury box, all prospective jurors filled out a questionnaire which asked, among other things, the juror's occupation, whether the juror had ever been accused of a crime or had ever been the victim of a crime, and whether the juror had served on a jury before.

The trial judge began by placing eighteen prospective jurors in the jury box, and conducting a voir dire, asking each of the eighteen a few questions. The court then allowed the prosecutor and

defense lawyer to ask further questions. Upon completion of the voir dire, the court invited challenges for cause (none were asserted) and peremptory challenges against the first twelve jurors. The prosecutor struck four prospective jurors, and the defense struck six. The court then invited challenges against the remaining jurors (numbers 13 through 18). No challenges for cause were exercised. The prosecutor then peremptorily struck two jurors, and the defense counsel three. Thus at the end of the first round, three jurors out of the eighteen had been qualified.

For the second round, twenty-two prospective jurors were placed in the jury box and questioned. Because three jurors had already been qualified, the court invited challenges to the first nine jurors from the new group. The prosecutor raised a challenge for cause, which the judge denied. The prosecutor then peremptorily struck three prospective jurors, and defense counsel struck four. The two remaining from the panel were then seated, bringing the total of seated jurors to five. The judge then repeated the same process with the next seven jurors: numbers ten through sixteen. The defense counsel unsuccessfully challenged one juror for cause. The prosecutor then peremptorily struck two jurors, and the defense counsel struck one. Four additional jurors were then seated for trial, bringing the total of selected jurors to nine. The process was then repeated with the next three jurors, all of whom were peremptorily struck (two by the prosecutor and one by the defense), and again with the last three jurors (one of which was struck by the prosecutor). This brought the total number of seated jurors to eleven, with only one more needed to complete the main jury of twelve.

The following day, a new panel of jurors was brought into the courtroom. Eighteen were placed in the jury box and questioned. Bonita Smith, who was African-American, was the first of the new eighteen. Upon completion of the questioning of the new eighteen, the court invited

3

challenges to one juror at a time, as only one was needed to complete the main jury of twelve. The court began with Ms. Smith, because she was in the first seat. Neither lawyer challenged Smith for cause. The court then asked the prosecutor whether he would peremptorily challenge juror Smith, which the prosecutor answered in the affirmative. The defense immediately raised a *Batson* objection, arguing that "[o]ut of the entire jury pool we have had, this is the only Afro-American that's been seated. She said absolutely nothing that I can see that would persuade the District Attorney's Office to kick her off, and it seems to me that it is clear the only reason the district attorney's elected to knock her off is because she is black, and my client is also black." It is apparently undisputed that Smith was the only African-American to have been placed in the jury box for questioning.

In response to the defendant's *Batson* objection the judge asked, "Don't you have to [show] a pattern of that, though?" Defense counsel answered that he could not establish a pattern of discriminatory challenges because there had been only one African-American called for voir dire, making it impossible for the prosecutor to have challenged more than one African-American. Defense counsel further argued in support of his objection that Smith had "stated the victim [who] was robbed is a clerk," a (possibly mis-transcribed) reference to the fact that Smith had stated during voir dire that her mother, a toll booth clerk, had been robbed.

The judge then asked the prosecutor if he wanted to "put anything on the record as to the reason" for challenging Smith. The prosecutor declined to do so. The trial judge then stated, "I can't establish a pattern from only one person. So . . . I will deny your *Batson* application."

Smith was thus excused. The judge then invited challenges to the juror in the second seat.

There were no challenges, so that this juror became the twelfth and final juror. Four alternates were then selected, and the following day the trial began.

Petitioner was convicted of first degree rape and second degree assault and was sentenced to twenty-five years to life on both counts. Petitioner appealed to the Appellate Division, which affirmed the conviction. *People v. Cousin*, 272 A.D.2d 477, 707 N.Y.S.2d 676 (App. Div. 2d Dep't 2000). As to petitioner's *Batson* claim, the Appellate Division reasoned:

> Contrary to the defendant's contentions on appeal, the fact that the prosecutor peremptorily challenged the only black potential juror to be questioned during voir dire was insufficient, without more, to establish a *prima facie* case of purposeful discrimination. The defendant did not articulate a sound factual basis for his *Batson* claim, as he failed to establish the existence of facts and other relevant circumstances giving rise to an inference of purposeful discrimination.

*Id.* at 478 (citations omitted). Leave to appeal to the New York Court of Appeals was denied. *People v. Cousin*, 95 N.Y.2d 851, 736 N.E.2d 863 (2000) (Rosenblatt, *J.*).

Petitioner moved in the Eastern District to set aside the conviction under § 2254. The district court denied the petition. As to the *Batson* claim, the court ruled that the state court decisions were in accord with federal law and petitioner had failed to make a *prima facie* showing of racial motivation in support of his *Batson* objection. *Cousin v. Bennett*, No. 01 Civ. 6060 (E.D.N.Y. Sept. 4, 2003). We granted a certificate of appealability on petitioner's *Batson* claim only, and now affirm the judgment of the district court.

## DISCUSSION

The Equal Protection Clause of the Constitution forbids a prosecutor from challenging jurors solely on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). In *Batson*, the Supreme

Court outlined a three-part burden-shifting framework that trial courts must use to determine whether a prosecutor unconstitutionally excluded a potential juror on the basis of race. 476 U.S. at 86-87, 96-98. First, the defendant must make a *prima facie* showing, based on "any . . . relevant circumstances," that the government's peremptory challenge was racially motivated. *Id.* at 96-97. The Court noted, as examples, that a pattern of exercising strikes against jurors of a particular race, or a prosecutor's racially-biased questions and statements during voir dire, might be sufficient to establish a *prima facie* case. *Id.* at 97. Second, if the defendant makes such a *prima facie* showing of racial motivation, the prosecutor is required to give a race-neutral explanation for the peremptory challenge. *Id.* at 97. Third, if the prosecutor gives a race-neutral explanation, the trial court must then determine whether the defendant has established that the peremptory challenge was motivated by race. *Id.* at 98.

Petitioner claims that he is entitled to habeas corpus relief because the New York state courts misapplied the first step in *Batson*'s three-part test. Habeas corpus relief is not warranted, however, unless the state court "unreasonably" applied law as established by the Supreme Court in ruling on petitioner's claim, or made a decision that was "contrary to" it. *See* 28 U.S.C. § 2254(d)(1); *see also Overton v. Newton*, 295 F.3d 270, 276-77 (2d Cir. 2002) (whether *prima facie* case has been shown is a "mixed question of law and fact," subject to § 2254(d)(1) standard). More fundamentally, habeas corpus relief is not warranted unless the petitioner can show that he is in custody in violation of federal law. *See* 28 U.S.C. § 2254(a). We conclude that the district court was correct in denying the petition.

Petitioner argues that the fact of the prosecutor's challenge to the only African-American

6

prospective juror to be called for voir dire was sufficient to establish a *prima facie* showing that the challenge was racially motivated. We disagree.

Petitioner is correct that *Batson* forbids the exclusion of even one juror on the basis of race. *See Green v. Travis*, 414 F.3d 288, 297 (2d Cir. 2005) (*citing Powers v. Ohio*, 499 U.S. 400, 409 (1991)). Thus a "pattern" of discriminatory exclusions is not required for a *prima facie* showing, and the exclusion of a single juror could, in circumstances tending to show racial motivation, be sufficient. A trial court evaluating whether a *prima facie* showing has been made must consider "all relevant circumstances." *Batson*, 476 U.S. at 96-97. Among other factors, the manner in which a prosecutor exercises peremptory strikes may be relevant to whether a *prima facie* showing was made. For example, if a prosecutor who possessed no information about prospective jurors other than what was visible from their appearance, proceeded to challenge the only African-American juror in a venire of sixty, or if a prosecutor's remarks or questions in the course of exercising a single challenge indicated racial motivation, the single challenge might well be sufficient to sustain a *prima facie* showing of a *Batson* violation. The circumstances of this case, however, were quite different. As explained above, by the time the prosecutor challenged Smith, he had already challenged fourteen (non-African-American) prospective jurors. The prosecutor, furthermore, did not select Smith for challenge out of a larger number of jurors. At the time the prosecutor challenged her, she was the only juror eligible to be challenged. Finally, the prosecutor had received information about each of the jurors, including Smith, from their questionnaires and then answers during voir dire, which information could have informed his decision.

In other words, although there are no doubt circumstances in which a prosecutor's challenge

of the only prospective juror of a particular race could give rise to a sufficiently strong inference of racial motivation to make a *prima facie* showing, the present facts do not give sufficient support to such an inference. *See United States v. Bergodere*, 40 F.3d 512, 516 (1st Cir. 1994) ("[T]he mere fact that the prosecutor challenges the only juror of a particular race, without more, does not automatically give rise to an inescapable inference of discriminatory intent."); *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994) ("[T]he fact that the juror was the one Black member of the venire does not, in itself, raise an inference of discrimination."); *cf. DeBerry v. Portuondo*, 403 F.3d 57, 69 (2d Cir. 2005) (trial court did not err by finding that a challenge to the only African-American juror in that *round* of jurors did not raise a *prima facie* case of racial motivation). *But see United States v. Roan Eagle*, 867 F.2d 436, 441 (8th Cir. 1989) (concluding that a *prima facie* case was made when "there was one potential American Indian juror and that juror was struck"); *United States v. Chalan*, 812 F.2d 1302, 1313-14 (10th Cir. 1987) (finding that where, "[i]n effect," three out of four American-Indian prospective jurors were removed for cause "and the last Indian member of the panel was stricken by the Government through a peremptory challenge," these circumstances establish a *prima facie* case).

Petitioner is correct in arguing that the trial judge misunderstood *Batson* in suggesting that a "pattern" of discriminatory strikes must be shown in order for the defendant to make a *prima facie* showing of racial motivation. The *Batson* opinion cited a "pattern" of strikes only as an example of how the inference might be suggested. *Batson* clearly contemplates that a *prima facie* showing of race motivation may arise from a single challenge if the circumstances sufficiently suggest the inference of race motivation. *See Batson*, 476 U.S. at 97.

Nonetheless, even assuming that the trial judge's reasoning was erroneous, habeas corpus relief is not warranted. Federal courts may not grant a writ of habeas corpus under § 2254 unless the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Even if the state court issued a decision "contrary to" clearly established Supreme Court law, *see id.* at § 2254(d)(1), a petitioner "cannot obtain relief on his *Batson* claim unless application of a *correct* interpretation of that decision leads to the conclusion that his rights were violated." *Bronshtein v. Horn*, 404 F.3d 700, 724 (3d Cir. 2005) (Alito, *J.*) (emphasis added). Because petitioner did not make a *prima facie* showing of racial motivation, his rights under the Equal Protection Clause were not violated when the trial judge denied his *Batson* objection, notwithstanding the state trial judge's misunderstanding of the rule. Therefore habeas corpus relief cannot be granted.[1]

Moreover, the decision of the Appellate Division, which superseded the trial judge's ruling,

---

[1]Petitioner also argues that a *prima facie* case was made because there was no obvious reason for the government to challenge Smith. *See* Pet'r. Br. at 8, 11. This argument is unavailing. The absence of an obvious race-neutral reason for excluding a juror is not sufficient to establish a *prima facie* showing of racial motivation. *See United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir. 1990) ("In making out a prima facie case, 'the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal.'" (*quoting United States v. Young-Bey*, 893 F.2d 178, 180 (8th Cir. 1990)). A party's valid reasons for exercising a peremptory challenge are often not apparent without explanation, and explanation is not required unless a *prima facie* showing of an improper motivation has been made.

Before the trial court, defense counsel also argued that a *prima facie* showing was made because Smith should have been *acceptable* to the prosecution as the relative of a crime victim. Petitioner has not pressed this point on appeal, either in the state or federal courts. In any case, we are not persuaded that Smith's relation to a crime victim suggests that the prosecutor's challenge was racially motivated, especially given that the prosecutor challenged a number of non-African-American crime victims and relatives of crime victims, as to whom there was no other obvious reason for the challenge.

was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d)(1). The Appellate Division did not repeat the trial judge's erroneous view that a "pattern" of discriminatory strikes was a prerequisite to making a *prima facie* showing of racial motivation. Instead, the court explained: "the fact that the prosecutor peremptorily challenged the only black potential juror to be questioned during voir dire was insufficient, without more, to establish a *prima facie* case . . . . [The defendant] failed to establish the existence of facts and other relevant circumstances giving rise to an inference of purposeful discrimination." *Cousin*, 272 A.D.2d at 478, 707 N.Y.S.2d at 676-77. Petitioner has cited to no Supreme Court case, nor can we find any, that would require a different outcome or analysis. In fact, the Appellate Division's analysis was consistent with *Batson*, which requires that the petitioner show "relevant circumstances" raising an inference of discrimination in order to make a *prima facie* case. *Batson*, 476 U.S. at 96. Neither *Batson* nor any other Supreme Court decision required the Appellate Division to remand the case to the trial court based on the trial court's misstatements of *Batson*'s requirements. The record was sufficient to permit the appellate court to arrive independently at the conclusion that petitioner had not made out a *prima facie* case. *See Moody v. Quarterman*, 476 F.3d 260, 267-68, 272 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 88 (2007) (denying habeas corpus relief because, while the state trial court erroneously failed to conduct the three-step *Batson* test, the state appeals court "did so in its stead," and although "we might disagree with the [state appeals court's] failure to remand the case to the trial court," the decision of the state appeals court was not unreasonable).

## CONCLUSION

Petitioner failed to make a *prima facie* showing that the prosecutor's exclusion of prospective juror Smith was racially motivated. Because the petitioner is not in state custody in violation of federal law, and because the state appellate court decision was not "contrary to," nor did it involve "an unreasonable application of," clearly established Supreme Court law, 28 U.S.C. § 2254(d)(1), habeas corpus relief may not be granted. The judgment of the district court is affirmed.