2011 VT 99

## State of Vermont v. Yai Bol

[29 A.3d 1249]

No. 10-009

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 9, 2011

314

*William H. Sorrell*, Attorney General, and *Ultan Doyle*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant Yai Bol appeals from his conviction for giving false information to a police officer and possession of cocaine. He argues that the trial court erred by preventing his counsel from using a peremptory challenge to strike a black member of the jury pool. He claims that this error should result in a new trial. We agree and reverse and remand.

¶ 2. Defendant was arrested after police were called to the scene of a reported fight in progress. An officer asked defendant if he had any identification and to identify himself. He provided the officer with someone else's identification documents and verbally identified himself as that person. Only later did he provide his actual identification in response to the officer's request that he produce further credentials. Defendant was then arrested. After defendant was placed in the back of a police cruiser, driven to the police station, and removed from the car, officers noticed a baggie containing white powder on the floor of the cruiser. The officers, who had earlier noted the car was clean and also observed

defendant with his pants pulled down while riding to the station, concluded that the powder was defendant's. It was later determined to be cocaine. Defendant was charged on four counts: two counts of assault, 13 V.S.A. 1023(a)(1); one count of providing false information to a police officer, 13 V.S.A. 1754(a); and one count of possession of cocaine, 18 V.S.A. 4231(a)(2).

¶ 3. At the jury draw, defendant's lawyer attempted to use one of his peremptory challenges to block a black member of the jury pool. The court denied this. Their exchange was as follows:

> THE COURT: She's the only black person on this jury, and I need a good reason; otherwise, I'm not going to let you challenge her.
>
> THE DEFENSE: Why do I need a reason? I don't think I need a good reason, Judge.
>
> THE COURT: Well, you certainly do. When you talk about the only person of African descent on a jury panel, you have to give me a reason for that, that's what the U.S. Supreme Court says. So if you don't have good reason, you can forget it.
>
> THE DEFENSE: What's that — you told me that only because she's African-American I'm not allowed to —?
>
> THE COURT: You cannot discriminate on the basis of race. She's the only black person on this panel.
>
> THE DEFENSE: Okay, let —
>
> THE COURT: Unless you have a good reason, she's staying there.
>
> THE DEFENSE: Judge, she's —
>
> THE COURT: Now can I make myself any more plain?
>
> THE DEFENSE: For the record, I mean I don't —
>
> THE COURT: Do you have a reason?
>
> THE DEFENSE: Yes, Judge, I don't think she's going to be looking favorable onto my client.
>
> THE COURT: And why are you saying that?
>
> THE DEFENSE: That's just an instinct I have, what can I tell you?

THE COURT: It's not sufficient —

THE DEFENSE: And, Judge, my —

THE COURT: I am not going to let you challenge her, so move on.

THE DEFENSE: Okay, I —

THE COURT: If you have another reason you want to put on the record, you go ahead and do it.

THE DEFENSE: Well, I'm objecting to you not letting me strike her. The first person I struck was Caucasian.

THE COURT: It doesn't matter. She's the only one on this panel, you need a reason.

THE DEFENSE: I just — my objection is noted for the record.

¶ 4. After this, the jury was seated, and the trial continued. Ultimately, the jury acquitted defendant of the assault charges but convicted him of providing false information to a police officer and possession of cocaine. On appeal, defendant contends that the trial court misstated federal constitutional jurisprudence in maintaining that the United States Supreme Court had ruled it impermissible to strike the sole black juror from a venire without stating a reason. He concludes that the court's erroneous denial of his peremptory challenge should result in a new trial because this ruling denied him a fair trial.

¶ 5. We begin by determining whether the trial court's application of federal constitutional law was correct. In stating that the "U.S. Supreme Court" requires an attorney wishing to make a peremptory challenge to the sole black juror to articulate his reasons, the trial court is understood to allude to *Batson v. Kentucky,* 476 U.S. 79 (1986), *modified, Powers v. Ohio,* 499 U.S. 400 (1991), and its progeny. *Batson* held that that under the Fourteenth Amendment a prosecutor cannot exercise peremptory challenges on the basis of race. *Id.* at 89. In this case the peremptory challenge in question was made by a defense attorney, rather than a prosecutor. But, despite defendant's assertion to the contrary, the United States Supreme Court has declared that *Batson* is equally applicable to defendants' peremptory challenges. *Georgia v. McCollum,* 505 U.S. 42, 59 (1992).

■ ¶ 6. Therefore, we look to *Batson* itself. To determine if an attorney has impermissibly discriminated on the basis of race in using peremptory challenges, *Batson* established a three-part test. The first is that opposing counsel, or the trial court acting sua sponte, must establish a prima facie case that discrimination has occurred. *Batson,* 476 U.S. at 96. This is discussed further below. Once such grounds are established, the attorney making the peremptory challenge must provide the court with a race-neutral justification for the challenge. *Id.* at 97. Third, the trial court must then weigh the explanation in light of all relevant circumstances to determine if the attorney, in fact, has a race-neutral reason for the challenge or if the attorney's stated rationale is merely a pretext for discrimination. *Id.* at 98.

■ ¶ 7. It is on the first step, in implicitly finding a prima facie case of discrimination, that the trial court erred. It is true, as the State notes, that this Court's standard of review for trial courts' decisions in voir dire is typically deferential. See *State v. Bernier,* 157 Vt. 265, 267, 597 A.2d 789, 790 (1991). Similarly, the United States Court of Appeals for the Second Circuit, in employing a deferential standard to review a trial court's prima facie *Batson* determination, declared that "[w]hile one could fairly argue that the determination of a *Batson* prima facie case could be subject to a two-step review — clear error for factual findings and de novo for rulings of law — in this context the inquiries often are not clearly delineated." *United States v. Martinez,* 621 F.3d 101, 109-10 (2d Cir. 2010). There may be times, based on subtle inferences from facts, where a trial court's prima facie conclusions should be reviewed deferentially, but here no deference is required. The trial court's prima facie determination rested on nothing other than defense counsel's proposed strike of the sole black juror from the venire, without any other reason, stated or apparent, for the court's insistence on a race-neutral explanation for the peremptory challenge. Thus, we review its determination de novo. See, e.g., *State v. Delaoz,* 2010 VT 65, ¶ 12, 189 Vt. 385, 22 A.3d 388 (explaining this Court's general rule that, on appeal, "we review the court's legal conclusions de novo and its findings of fact under a clearly erroneous standard").

■ ■ ¶ 8. The legal threshold for establishing a prima facie case is modest and may be satisfied in many ways. See *Johnson v. California,* 545 U.S. 162, 170 (2005) (holding that the first step

does not require a showing that a violation is "more likely than not"); *Aspen v. Bissonnette,* 480 F.3d 571, 574 (1st Cir. 2007) ("Our post-*Batson* precedents reflect the understanding that the burden is not substantial."). Nonetheless, some evidence of potential bias or prejudice is required. *Batson* explained that the challenging party *"must* show that [the opportunity to discriminate created by the system of peremptory challenges] and any other relevant circumstances raise an inference that the [attorney] used that practice to exclude the veniremen from the petit jury on account of their race." 476 U.S. at 96 (emphasis added). More recently, the Supreme Court reiterated this principle: "[A] defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson,* 545 U.S. at 170. The burden to produce "sufficient evidence" is with the party challenging the peremptory strike. See *id.* at 171 (noting that the "burden of persuasion rests with, and never shifts from, the opponent of the strike" (quotation omitted)). *Batson* did not declare a set list of criteria for trial courts to use to determine whether the burden had been met. Instead, it explained that trial courts should consider "all relevant circumstances" and provided a nonexclusive list of what evidence could be relevant. 476 U.S. at 96-97. The evidence, for example, could consist of a pattern of peremptory strikes or the litigant's "questions and statements during *voir dire* examination and in exercising his challenges," which could reveal discriminatory or nondiscriminatory intent. *Id.* at 97.

¶ 9. In this case, the record establishes only one fact in purported support for the trial court's inference of discriminatory intent. The prosecutor did not object to defendant's attempted strike. Instead, in response to the challenge, the court stated, sua sponte: "When you talk about the only person of African descent on a jury panel, you have to give me a reason for that, that's what the U.S. Supreme Court says." When defendant's attorney questioned this, the court replied, "You cannot discriminate on the basis of race. She's the only black person on this panel." Later, after defense counsel failed to provide a reason for the challenge other than his "instinct," he objected to the court's ruling, pointing out that he had previously struck a white person from the jury. The trial court responded, "It doesn't matter. She's the only [black person] on this panel, you need a reason." The court's

statements demonstrate that it was relying on nothing else than the fact that there was a peremptory challenge to the single black juror to support its suspicion of discrimination. Nor does the transcript of the voir dire yield any additional evidence in support of the court's perception of a prima facie case of racial motive.

¶ 10. The federal courts decline to provide more than vague guidance to trial courts, instead leaving them wide latitude in their determinations. See, e.g., *id.* ("We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors."). Nevertheless, we can determine a minimum prima facie requirement. The act of excluding the sole minority juror from a jury panel need be accompanied, at the least, by some surrounding fact or circumstance from which a motive to strike based on bias or prejudice toward a person of that race can be reasonably suspected. The potential for discrimination need not be certain, nor even probable. For instance, the threshold for finding a "pattern" of discrimination, one of the examples of sufficient prima facie evidence provided in *Batson, id.,* is a low one. See, e.g., *Johnson,* 545 U.S. at 173 (holding that where jury venire's three minority jurors were peremptorily challenged, a prima facie case existed). Likewise, where, as here, the only minority juror or jurors on a panel were stricken, that action was one of other factors supporting an inference of discrimination, as illustrated by a Ninth Circuit Court of Appeals case, *United States v. Esparza-Gonzalez,* 422 F.3d 897, 904-07 (9th Cir. 2005). The *Esparza-Gonzalez* case also illustrates a variety of factors a trial court can consider. The court found a prima facie case where the only two Latino jurors were excluded, and a range of contextual factors supported an inference of discrimination, such as: counsel's waiver of voir dire; the similarity of the responses of the challenged juror and other jurors to the trial court's voir dire; counsel's unusual waiver of peremptory challenges to avoid seating the Latino jurors; and the fact that the case involved illegal immigration, a potential ethnically charged issue. *Id.* No particular constellation of facts is necessarily required; a single accompanying circumstance, such as racial commonality between a party and the juror sought to be excluded by the opposing party has been held prima facie sufficient to demand a race-neutral explanation. See *United States v. Roan Eagle,* 867

F.2d 436 (8th Cir. 1989) (holding that excluding sole juror of same race as defendant sufficient for prima facie case); see also *United States v. Chalan*, 812 F.2d 1302, 1313-14 (10th Cir. 1987) (concluding that a prima facie case existed for a Native American defendant to challenge where all four Native Americans in a jury pool were excluded based on for-cause removals and peremptory challenges).[1]

■■ ¶ 11. Today's holding is narrow: the sole fact that a party moves to strike the only minority juror from the venire is insufficient, by itself, to establish a prima facie case of discriminatory motive. Even a single additional circumstance could, in a different case, suffice to trigger a legitimate *Batson* inquiry. Absent from the instant case was *anything* additionally noted by the trial court, such as counsel's tone, demeanor, pattern, past conduct, or other surrounding circumstance, suggestive of a discriminatory motivation behind the peremptory challenge.

¶ 12. The Second Circuit Court of Appeals recently decided an almost identical question in *Cousin v. Bennett*, 511 F.3d 334 (2d Cir. 2008). In *Cousin*, the court wrote, "Petitioner argues that the fact of the prosecutor's challenge to the only African-American prospective juror to be called for voir dire was sufficient to establish a *prima facie* showing that the challenge was racially motivated. We disagree." *Id.* at 338. The few differences between the instant case and *Cousin* are immaterial. It was the prosecutor in *Cousin*, rather than the defense attorney, who attempted the peremptory strike, but nothing in federal jurisprudence suggests that the prima facie threshold to show a discriminatory challenge is lower for prosecutors than for the defense. While the trial court in *Cousin* ruled that the defense failed to meet its prima facie

---

[1] Not explicitly disagreeing with these holdings, a recent Ninth Circuit opinion, *Crittenden v. Ayers*, 624 F.3d 943 (9th Cir. 2010), diverges on whether a peremptory strike, by itself, of a juror of the same racial or ethnic group as an adverse party raises a prima facie need to explain further. In *Ayers*, the defendant was black and the prosecution challenged the only black juror in the venire. The court found prima facie grounds to challenge the strike under *Batson*, but only after comparative examination of voir dire and the prosecutor's notes about each juror. *Id.* at 955-57. As explained earlier in *Powers*, 499 U.S. at 415-16, congruence between one party's race and the target of an adverse party's peremptory strike is not a prerequisite to a *Batson* violation, but its occurrence can trigger the inquiry in the Eighth and Tenth Circuits, while its occurrence alone could be insufficient to trigger the inquiry in the Ninth Circuit. In any event, there was no such congruence in the instant case.

burden to support its claim against the prosecutor of discriminatory peremptory challenge, the opposite posture here and the fact that the court raised the issue sua sponte is of no moment. As discussed above, the burden of proof is the same, and the standard on review is de novo. Further, regardless of the trial court's ruling below, the appellate court's holding in *Cousin* is an unambiguous statement of law that a peremptory strike of the only black juror is, without more, not enough for a prima facie *Batson* claim.

¶ 13. The Second Circuit is not unique in its holding. See *Crittenden v. Ayers*, 624 F.3d at 955 ("[T]he prosecutor's use of a peremptory strike against the only African-American prospective juror is a relevant consideration, although it does not by itself raise an inference of discrimination."); *United States v. Bergodere*, 40 F.3d 512, 516 (1st Cir. 1994) ("[T]he mere fact that the prosecutor challenges the only juror of a particular race, without more, does not automatically give rise to an inescapable inference of discriminatory intent."); see also *United States v. Horsley*, 864 F.2d 1543, 1546 (11th Cir. 1989) (per curiam) (rejecting that striking the sole minority juror by itself established a prima facie case of discrimination).

¶ 14. Cases cited by the State to the contrary are not persuasive.[2] *Roan Eagle* and *Chalan*, for example, and as discussed above, are not inconsistent with *Cousin* and are distinguishable from the instant situation. Both involved prosecution peremptory strikes of sole minority jurors from a venire when the jurors shared racial identity with the defendants. The courts held that that circumstance supplied the prima facie showing of possible discriminatory intent sufficient to warrant a nondiscriminatory

---

[2] Nor is there any support for the State's suggestion that the small number of minority citizens in Vermont recommends the trial court's approach. Whether or not discerning a pattern of discrimination is more difficult in Vermont, patterns of discrimination are but one way of establishing a prima facie case. See *Batson*, 476 U.S. at 97 (stating that "the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose," but noting that this example is merely "illustrative" and encouraging trial courts to judge the existence of a prima facie case on all relevant circumstances); see also *infra*, ¶ 13. Further, the State cites neither authority nor reason for the proposition that the threshold burden need be lower in a state with low minority populations, or a different measure by which to presume or detect discriminatory motive. Should a party assert a credible threshold supporting a different analysis, we will consider it then.

explanation. *Roan Eagle*, 867 F.2d at 441; *Chalan*, 812 F.2d at 1314. Conversely, in the present case, the defense sought to exclude a juror whose race was the same as defendant's, and the trial court did not explain how the congruence between defendant's and the juror's race led to an inference of racial motivation in the defendant's challenge.

■ ¶ 15. Having found that the court erred in barring defendant's peremptory challenge, the question of remedy remains. It is settled Vermont law that when a defendant is left with an undesired juror after exhausting his peremptory challenges in response to the trial court's failure to remove a juror properly challenged for cause, the court's error is reversible error. *State v. Doleszny*, 146 Vt. 621, 622, 508 A.2d 693, 694 (1986) (per curiam); *State v. Holden*, 136 Vt. 158, 161, 385 A.2d 1092, 1094 (1978). Reversal applies even in the absence of prejudice. *State v. Santelli*, 159 Vt. 442, 446-47, 621 A.2d 222, 224-25 (1992) (declining to condition retrial on actual prejudice "because the focus of the appellate inquiry would not be on the court's error, but on the qualifications of the juror subject to the lost peremptory challenge," rendering the court's error practically unreviewable). The situation is somewhat askew in the instant case where defendant was not wrongly required to exhaust his peremptory challenges, but was still compelled to abide a juror not to his liking when, but for the court's error, the juror should have been excused. We have long treated the peremptory opportunity to strike some jurors without explanation as a "right essential to the full enjoyment of a respondent's right to a jury trial" and, accordingly, reverse and remand for retrial when that right is wrongfully denied. *Id.* at 446-47, 621 A.2d at 225 (quotation omitted).[3] The State posits no reason for a different result here.

*Reversed and remanded for a new trial.*

---

[3] Interestingly, the Supreme Court recently held that a defendant's federal due process rights are not violated when his attorney's peremptory challenge is blocked by a trial court's good faith misapplication of *Batson*. *Rivera v. Illinois*, 556 U.S. 148, 160, 129 S. Ct. 1446, 1455 (2009). The Court in *Rivera*, however, noted that states are free to consider such errors reversible per se. *Id.* at 161-62, 129 S. Ct. at 1456.